IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 11 2012

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

MARK BARNES, ET AL.,                §
                                    §
            Plaintiffs,             §
                                    §
VS.                                 §    NO. 4:11-CV-335-A
                                    §
TANDY LEATHER COMPANY, LP,          §
ET AL.,                             §
                                    §
            Defendants.             §

## ORDER

After having reviewed certain of the items filed jointly by the parties to the above-captioned action on May 11, 2012, the court has concluded that the parties have failed to make changes by way of the proposed revised settlement agreement that resolve important concerns expressed by the court in the court's order of April 11, 2012, or that would provide the degree of clarity and consistency that would facilitate a reader's understanding of the meaning and intent of the document.

One of the General Remarks made the court in the April 11 order was the following:

> If the parties wish to proceed further with a settlement, the court suggests that they start with a redrafting of the proposed settlement agreement to the end of resolving the court's concerns . . . .  The court expects the parties when preparing the redrafted settlement agreement to devote enough attention to the project to cause each provision of the document to be consistent with all the others and to ensure that the document is worded in such a way that it will be readily understood by any putative class member who

elects to study it as part of his or her evaluation as
to whether he or she wishes to participate in the
settlement.

Apr. 11, 2012 Order at 20-21.  While the proposed revised

settlement agreement presented to the court with the May 11

filings resolves some of the court's concerns, it fails to resolve

others; and, the rewording of the proposed revised settlement

agreement was not done in such a way that its contents would be

readily understood by the putative class members who might elect

to study it as part of his or her evaluation as to whether the

member wishes to participate in the settlement.

     The court does not wish, or plan, to become involved in the

drafting of settlement documents, but to the end of giving the

parties a degree of guidance as to what the court would expect if

the parties wish to pursue further the matter of settlement the

court has prepared a reworded version of the Section I

"Definitions" and the "Release of Claims" part of Section II of

the proposed revised settlement agreement.  Attached as an exhibit

to this order is the text of the rewording done by the court.  The

court is not suggesting that the parties adopt verbatim, or even

substantially, the wording included in the exhibit, but is

providing the exhibit to the parties for the sole purpose of giving them guidance as to what the court expects.[1]

At the outset, the court notes that, while there have been changes in the language defining the scope of the discharges of liability contemplated by the proposed agreement, the revised wording on that subject in the proposed revised settlement agreement does not resolve the court's concerns on that issue.  As the court made known to the parties in the April 11 order, and as the parties can see from the attached exhibit, the court expected that the discharges of liability language would clearly say that the discharges are limited to the claims asserted in the lawsuit and to the defendants in the lawsuit.  Based on the explanations given on pages 2 and 3 of the Joint Brief and Response filed May 11, the court agrees that the "employer" concept should be added.

Another concern the court expressed in the April 11 order had to do with the "opt in" and "opt out" language in the settlement

---

[1]The definitions section of the proposed revised settlement agreement appears to have excess verbiage. There does not appear to be any need for definitions of "Collective Action Member(s)" or "Class Action Member(s)." By slight modifications in the definitions of "Settlement Class" and "Releasing Parties," as the court has suggested in the exhibit, one or both of those terms would appear to serve, with greater clarity, throughout the document in place of the terms "Collective Action Member(s)" and "Class Action Member(s)." The definition of "Net Settlement Fund" is deleted in the exhibit because that term is not again used in the proposed revised settlement agreement except in the subpart 5.a. on page 17, which is self-explanatory. The need for a definition of that term is unnecessary considering that the message that appears to be conveyed by the definition is conveyed in the same language in subpart 4. on pages 16-17 of the document in subpart 5.a. on page 17. Other of the proposed definitions contain unnecessary verbiage that does not add to clarity but, if having any effect, causes the understanding of the document to be more difficult. In some instances, modifications in other parts of the document might be required to accommodate changes in a definition.

document.   After reading the wording of the proposed revised

settlement agreement and the Joint Brief and Response the parties

filed in response to the April 11 order, the court now realizes

that the court misunderstood what the parties intended.   The court

explained in the April 11 order that the court read the proposed

settlement agreement as providing that

> the putative class members have a choice of opting in
> the FLSA collective action and, thereby, benefitting
> from the settlement as to that feature of the
> settlement, while, at the same time, opting out as to
> the state law class action, thus foregoing any benefit
> from the settlement as to that feature of the case and,
> correspondingly, preserving the right to assert a
> separate, independent, state law claim against either
> or both defendants, and vice versa.

Apr. 11, 2012 Order at 17.   In their Joint Brief and Response the

parties informed the court that:

> The Parties have addressed the Court's concerns
> regarding the "opt in" and "opt out" language in the
> settlement documents by clarifying that, in order for a
> Class Action Member to receive any settlement payment,
> the Class Action Member must sign and return a Consent
> to Join/Class Action Claim Form and *not* sign and return
> a Notice of Exclusion From Class Action Form.  *See id.,*
> §§ I. D. and II. C. 5.(a) and (b), Ex. 1, App. 5,17-18;
> *see* Notice, § IV. A. 3, Ex. 2, App. 39-42.  While the
> Parties intend for the putative class members to have a
> choice as to whether to opt into the collective action
> and whether to opt out of the class action, the Parties
> also intend that no Class Action Member be permitted to
> participate in the settlement proceeds unless he or she
> has both opted into the collective action *and* not opted
> out of the class action by returning a Notice of
> Exclusion From Class Action Form.

Joint Br. and Resp. at 5-6.

The settlement document should make clear, if it is the
intent of the document, that any Settlement Class member who does
not both opt in and refrain from opting out will not receive any
settlement payment and that each Settlement Class member who does
not do both, or who fails to opt in, or who opts-out will not be
adversely affected by the settlement agreement.  The wording of
the proposed revised settlement agreement on the subject is
uncertain.  The court adds that it probably would not approve a
settlement agreement that does not make clear that a member of the
Settlement Class who is not eligible to receive a payment under
the agreement would not be adversely affected by the agreement if
he or she were to choose at a future date to make an FLSA claim or
any state law claim that might be available to the member based on
already existing or future facts.

The court has used November 23, 2008, in the "Settlement
Class" definition in the exhibit as the beginning date so that the
proposed settlement agreement will be consistent with the
allegations in paragraph 22 of the second amended complaint in
this lawsuit.  If there is a reason why different beginning dates
need to be used as to certain aspects of a settlement and as to
why the November 23, 2008, date should not be used as to all
features of a settlement, the court should be provided an adequate
explanation as to the reason or reasons why that is so.   The

court does not consider that the explanations given in section D. on pages 4 and 5 of the Joint Brief and Response are adequate.

Other changes reflected in the attached exhibit were made for the purpose of eliminating what appeared to be excessive verbiage and/or uncertainty in the definitions that would have the potential to create uncertainty whenever the defined terms are later used in the main text of the document. Also, the court suggests that for the sake of simplifying the process and verbiage the proposed Consent to Join Class Action and Notice of Exclusion forms be combined into a single document containing appropriate explanations and instructions for completion and return of the document.

As the court indicated in the April 11 order, the court considered the starting point after April 11 to be the redrafting of the proposed settlement agreement to the end of resolving the court's concerns. That has not occurred within the deadline fixed by the court. Consequently, the court has not taken the time to evaluate all of the material furnished to the court on May 11. If the parties with to proceed further with the matter, they are at liberty to again attempt to address the court's concerns in another redrafted proposed settlement agreement.

For the time being,

The court ORDERS that the Joint Motion for Certification of Settlement Class and for Preliminary Approval of Class and Collective Action Settlement and of Settlement Class filed January 24, 2012, be, and is hereby, denied.

Unless the parties make known in a serious way within the next few days that they wish to proceed with a settlement that adequately addresses the court's concerns, the court plans to issue a new scheduling for trial and pretrial matters. The court might add that the court is not taking the time in this order to mention all of the wording of the proposed revised settlement agreement that the court finds unacceptable.[2]  Counsel for the

------

[2]The court does note the following issues the parties should consider if they decide to pursue further the matter of a possible settlement:

    (a)    The language of II.B.1. is somewhat confusing when it says that the "QSF shall be an interest-bearing account at a federally insured bank" and then contradictorily says that "[t]he funds in the QSF shall be invested either in short-term U.S. Treasury securities . . . or in an SEC-registered money market fund . . . ." Presumably the intent was that the QSF would "initially" be invested in an interest-bearing account and that thereafter the funds would be invested in the other ways mentioned. And, if the "federally insured bank" feature is thought to be important, there probably should be language indicating that more than one bank would be used so that no bank deposit would be in excess of the federally insured limit. A related issue has to do with the first sentence of II.C.1. stating that the Claims Administrator shall "open" a QSF account. This seems to be inconsistent with the intent, as evidenced by II.B.1., that Defendants are to open the QSF account.

    (b)    Section II.C.1. says on page 14 that the "QSF shall be administered pursuant to the provisions of this Settlement Agreement and subject to the Court's continuing supervision and control . . . ." The court is not inclined by approval of a settlement agreement to agree to have continuing supervision and control over administration of the agreement. All aspects of the settlement agreement should be administered pursuant to the provisions of the agreement, and applicable law, and not the "continuing supervision and control" of the court. The "continuing supervision" problem appears as well in II.D.2. and perhaps other

(continued...)

parties need to understand that the court expects them, if they wish to pursue the matter further, to take the time to carefully word the proposed settlement agreement so that excess, difficult to understand, inconsistent, or otherwise inappropriate wording is eliminated or corrected.

SIGNED June 11, 2012.

JOHN McBRYDE
United States District Judge

---

[2](...continued)

places in the document.  The court has a similar concern about the "retains exclusive jurisdiction" language of II.D.5.f.  Customarily, the court does not include language of that kind in any order or judgment.  The court will have whatever jurisdiction it has, without language of that sort.

(c)   The meaning of the second complete sentence on page 16 in II.C.3. (the sentence starting with the words "In the event") is puzzling.  Perhaps the puzzle would be solved in a new proposed revision of the settlement agreement if further work is done on the "opt in" and "opt out" language and the "Class Action Member" and "Collective Action Member" concepts are abandoned in favor of other terminology.

(d)   The court is uncertain as to the meaning of the words "Court's Order" that is used in the first line of II.D.2.

(e)   Unless the court has overlooked it, the document does not specify when the funds will be deposited to create a Qualified Settlement Fund.  The court notes that II.D.2. says that plaintiffs and defendants shall request entry of an order that, inter alia, authorizes "the parties to open a Qualified Settlement Fund."  However, that sentence does not contemplate an order obligating anyone to open such a fund.

(f)   There is nothing in II.D.2.f. that says when the proposed injunction would terminate, if the court were to choose to order such an injunction.

(g)   The court does not think that it would approve an agreement that prohibits members of the Settlement Class other than plaintiffs from engaging in whatever communications they might wish to engage in relative to action that they think should be taken in response to a proposed settlement.  In other words, the court is inclined to think that it would not approve II.D.4. as now worded.  A similar problem exists in the second and final sentence of III.C. to whatever extent it might be read to prohibit communications by Settlement Class members other than plaintiffs.

(h)   The provisions of III.F. would appear to be unacceptable unless the second sentence were to be changed to say that "[a]mendments and modifications may not be made without notice to the Settlement Class and unless authorized by the Court."

8

I.    <u>DEFINITIONS</u>

A.    *"Lawsuit"* means the action captioned *Mark Barnes, Donna Cavota and Jerry Mercante on behalf of themselves and all others similarly situated v. Tandy Leather Company, LP, and The Leather Factory, LP,* Case No.4: 11-cv-00335-A, in the United States District Court, Northern District of Texas, Fort Worth Division, alleging collective and class claims for violation of the FLSA and the state wage-hour laws of Alaska (Alaska Stat. §§ 23.10.050, et seq.), California (Cal. Code Regs. tit. 8, §§ 11010, et seq., Cal. Lab. Code §§ 500, et seq., 1194, et seq., 200, et seq., including but not limited to 201, 202, 203, and 226, CCP 1021.5, and IWC Orders 2-2000, et seq.; Cal. Bus. & Prof. Code §§ 17000, including, but not limited to, 17200, et seq.), Colorado (Colo. Rev. Stat. §§ 8-6-101, et seq.), Connecticut (Conn. Gen. Stat. §§ 31-58, et seq.), Illinois (820 Ill. Compo Stat. §§ 105/I, et seq.), Kentucky (Ky. Rev. Stat. § 337, et seq.), Maryland (Md. Code §§ 3-401, et seq.), Massachusetts (Mass. Gen. Laws ch. 151, § lA, et seq.), Minnesota (Minn. Stat. §§ 177.21, et seq.), Montana (Mont. Code §§ 39-3-401, et seq.), Nevada (Nev. Rev. Stat. §§ 608.005, et seq.), New Mexico (N.M. Stat. §§ 50-4-01, et seq.), New York (N.Y. Lab. Law §§ 160, et seq.), North Carolina (N.C. Gen. Stat. §§ 95-24, et

seq.), North Dakota (N.D. Cent. Code § 34-06-01, et seq.), Ohio
(Ohio Rev. Code §§ 4111.01, et seq.), Oregon (Or. Rev. Stat. §§
651.010, et seq.), Pennsylvania (43 P.S. §§ 333.101, et seq.),
Washington (Wash. Rev. Code §§ 49.46.005, et seq.), and Wisconsin
(Wis. Stat. §§ 103.01, et seq.), and common laws for failure to
pay overtime compensation with respect to bonuses, subtracting
payments made to hourly Store Managers for overtime compensation
from the gross profits of individual stores, improperly
recalculating the hourly rate of pay of Store Managers,
improperly subtracting business losses from the gross profits of
the store, and claims under federal and state laws for
misclassifying Store Managers as exempt from overtime and the
allegations brought on an individual basis by named Plaintiffs
Mark Barnes and Donna Cavota for retaliatory discharge or
wrongful termination.

   B.   "*Class Representatives*" means Mark Barnes, Donna Cavota
and Jerry Mercante.

   C.   "*Parties*" means Plaintiffs and Defendants.

   D.   "*Settlement Class*" means Plaintiffs and all other
current or former Store Managers employed by either of the
Defendants in either Alaska, California, Colorado, Connecticut,
Illinois, Kentucky, Maryland, Massachusetts, Minnesota, Montana,

Nevada, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Washington, or Wisconsin at any time between November 23, 2008, and the Date of the Claims Deadline.

E.   *"Claims Administrator"* means Simpluris, Inc., 1485 S. Semoran Blvd., Suite 6-1401, Winter Park, Florida, 32792 (toll free number 1-800-779-2104).

F.   *"Notice"* means the Notice, in the form attached hereto as Exhibit 1, of Lawsuit and Settlement Agreement to be sent to the Settlement Class.

G.   *"Claims Deadline"* means the date that is sixty (60) days after the Notice is postmarked.

H.   *"Settlement Class Counsel"* and *"Plaintiffs' Counsel"* mean Mark R. Thierman, Thierman Law Firm, PC, 7287 Lakeside Drive, Reno, NV 89511, 775-284-1500; and Grant D. Blaies, Blaies & Hightower, L.L.P., 777 Main Street, Suite 1900. Fort Worth, TX 76102, 871-334-8294.

I.   *"Defendants' Counsel"* means Jonathan C. Wilson, Haynes and Boone, LLP, 2323 Victory Avenue, Suite 700, Dallas, TX 75219, 214-651-5646; and Laura E. O'Donnell, Haynes and Boone, LLP, 112 E. Pecan Street, Suite 1200, San Antonio, TX 78205, 210-978-7421.

**Exhibit to Order signed June 11, 2012, in Case No. 4:11-CV-335-A**
**(Page 3 of 6)**

J.   *"District Court"* or *"Court"* means the United States District Court for the Northern District of Texas, Fort Worth Division.

K.   *"Date of Preliminary Approval"* means the date as of which this Settlement Agreement is preliminarily approved, as provided in Section II.D.2.

L.   *"Date of Final Settlement"* means the date after the following has occurred: (a) the Court has entered the Order and Final Judgment and (b) the time for appeal or to seek permission to appeal from the Order and Final Judgment has expired or, if appealed, the date that the Order and Final Judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review.

M.   *"Effective Date"* means June _____, 2012.

N.   *"Qualified Settlement Fund"* means the fund described in Section II.B.1., including any interest accrued thereon.

O.   *"Order and Final Judgment"* means the Order and Final Judgment of the Court approving the Settlement. as described in Section II.D.5.

P.   *"Released Claims"* means any and all claims based on any conduct of the kind described in any of the eight causes of action alleged in Plaintiffs' Second Amended Collective and Class

Action Complaint that was filed in the Lawsuit on January 18, 2012, which eight causes of action are summarized in Section I.A.

Q. "*Releasing Parties*" means Plaintiffs and all other members of the Settlement Class who have validly and timely submitted a properly completed Consent to Join/Class Action Claim and Non-Exclusion Form attached as Exhibit A to the Notice and who share in the Qualified Settlement Fund.

R. "*Released Parties*" means Defendants and any other entity or individual who is deemed by law to be an "employer" of any member of the Settlement Class with respect to the conduct on which any of the eight causes of action alleged in the Lawsuit is based, which eight causes of action are summarized in Section I.A.

II. SETTLEMENT.

    A.   <u>Release of Claims</u>.

       *1. Release.* Upon entry of the Order and Final Judgment, and in consideration of the valuable considerations set forth in this Settlement Agreement, the Releasing Parties shall be deemed to have fully, finally and forever released, relinquished and discharged the Released Parties of and from any and all Released Claims.

**Exhibit to Order signed June 11, 2012, in Case No. 4:11-CV-335-A (Page 5 of 6)**

3.   *Waiver.*   Upon the Date of Final Settlement, the Releasing Parties shall be deemed to have waived as to Released Claims the provisions, rights, and benefits of Section 1542 of the California Civil Code which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Releasing Parties shall further be deemed to have waived as to Released Claims all similar provisions, statutes, regulations, rules, or principles of law or equity of any other state or applicable jurisdiction, or principle of common law arising out of or that could have been asserted based on the facts and theories pled in the Lawsuit.   Releasing Parties acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Released Claims, but, in consideration of the valuable considerations set forth in this Settlement Agreement, their deemed waiver nevertheless shall be given full effect.

**Exhibit to Order signed June 11, 2012, in Case No. 4:11-CV-335-A (Page 6 of 6)**